(No. 48996.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT LOFTON, Appellee.

*Opinion filed November 30, 1977.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon, Paul Benjamin Linton, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

No appearance for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, the defendant, Robert Lofton, was found guilty of unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)) and aggravated assault (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)), and sentenced to serve one year on probation, with the requirement that the first seven days be spent in the county jail. Both convictions were reversed by the appellate court (42 Ill. App. 3d 211); we then granted the People's petition for leave to appeal. An assistant public defender represented the defendant in the trial court, and a private attorney was his counsel in the appellate court. He was not represented on this appeal, and he did not seek to appear *pro se*.

The defendant, an employee of a licensed detective agency, was driving his car in Chicago on January 19, 1975, at about 1:30 a.m. The principal witness for the prosecution, Victor Mladic, testified that the defendant

drove through a stop light at approximately 70 miles per hour, and struck another car, which was spun around four times by the impact. The defendant fled from the scene of the accident, but the driver of a car following the car that had been struck pursued him for four blocks and forced his car to the curb. The occupants of the pursuing auto, including Mladic, approached the defendant's car intending to detain him for the police. The police had already been called by the occupants of another auto, who had seen the accident and who had also joined in the pursuit. There was conflicting testimony as to what then occurred. A struggle did develop between the defendant and several others, including Mladic. Mladic testified that, as he approached the car, the defendant "was coming up with a gun from somewhere" and that he (Mladic) "knocked it out of his hand immediately." The defendant testified that he had been dazed and injured in the collision, that he had stopped of his own volition, and that as he was in his car composing himself, "people ran up to the car and started beating me up." He said that he was snatched out of the car, struck in the eye, and thrown to the ground. He denied having pointed his gun at anyone, saying that it had been on the car seat, but had fallen from it. The arresting officer, who arrived after the struggle, testified that the defendant's face was bleeding. He said that he gave the accused the admonition required under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, but had no other conversation with him.

At trial, the defendant produced an Illinois Department of Law Enforcement identification card, a city of Chicago weapon registration card, a State firearms owner's identification card, and an employee identification card of Inter-Urban Detective and Security Group. He testified that he had been doing investigative work on a divorce case prior to the accident, and that he had information that the man whom he was seeking could usually be found in that vicinity. There was no claim he was engaged in any

investigative activity at the time of the collision.

We consider first whether the appellate court erred in holding that the defendant brought himself within the provision exempting employees of a licensed detective agency from the operation of the unlawful use of weapons statute (Ill. Rev. Stat. 1975, ch. 38, par. 24–2(a)(4)). The statute, under specified conditions, exempts security guards, the definition of which includes certain employees of licensed detective agencies, "provided, that such security guard has successfully completed a course of study, approved by and supervised by the Department of Registration and Education, consisting of not less than 30 hours of training which shall include theory of law enforcement, liability for acts and the handling of weapons. The Department *** shall provide suitable documentation to demonstrate the successful completion of such course." The statute then provides: "Such documentation shall be carried by the security guard at all times when he is in possession of a concealable weapon." (Ill. Rev. Stat. 1975, ch. 38, par. 24–2(a)(4).) The defendant testified that he had completed the course of training to qualify for this exemption, but that he had not received any card or other documentation to evidence completion of the course.

This court observed in *People v. Levy Circulating Co.,* 17 Ill. 2d 168, 171: "It is a rule of general acceptance as to the construction of statutes, that exceptions or provisos found in a statute are to be strictly construed. *People ex rel. Bowen v. Hughes,* 370 Ill. 255, 258." The legislature in creating the exemption here explicitly provided that specified evidence of qualifying for the exemption "shall be carried by the security guard at all times when he is in possession of a concealable weapon." The sentence contains only the provision that documentation shall be carried at all times. Declaring this requirement is the only purpose of the sentence. If the stated requirement of carrying the documentation at all times is not considered absolute, the sentence must be considered meaningless.

Quite reasonably, however: "A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous. (Citations.)" *People ex rel. Barrett v. Barrett,* 31 Ill. 2d 360, 364-65.

Considering the above observations and the general recognition that unlawful use of weapons constitutes one of society's most grievous problems, we judge that the legislature intended, through the language it employed, that one claiming exemption from the statute had to have in his possession the prescribed evidence that he was a security guard who had received the training directed by the statute.

We would note that the automobile driver's license statute, requiring a driver to have the license in his possession while driving, contains a provision which expressly precludes conviction if a. driver who was not carrying his license at the time of arrest produces in court evidence of a license valid at the time of his arrest. (Ill. Rev. Stat. 1975, ch. 95½, par. 6—112.) The unlawful use of weapons statute does not contain a similar provision for a defendant prosecuted under that act. The court in *People v. Cahill,* 37 Ill. App. 3d 361, 364, compared the absence of such an exculpatory provision in the firearms and ammunition act (Ill. Rev. Stat. 1973, ch. 38, par. 83—2(a)) with the exculpatory provision in the automobile driver's license statute and observed: "If the legislature had intended the crime of failure to possess a Firearm Owner's Identification Card to be interpreted in a similar manner, it would have similarly included such a clause within the Act's provisions." The court's observation may be applied to the unlawful use of weapons statute.

We judge, too, that the appellate court erred in reversing the conviction for aggravated assault. As was stated in *People v. Fleming,* 50 Ill. 2d 141, 145-46: " 'This having been a bench trial, it was for the trial court to determine the weight and credibility of testimony and make a finding as to whether the guilt of the accused had

been established. Its judgment should not be set aside unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. *** [Citation.] ' " The testimony of Mladic was that the defendant drove at 70 miles per hour through a red light and struck another car, spinning it around four times. He then fled, but was overtaken several blocks away by witnesses to the collision. The defendant concededly had a gun in his car. Mladic said that when the car door was opened, the defendant was coming up with the gun and that he, Mladic, knocked it from his hand. The defendant had a different version of what occurred, but the trial judge heard and saw the witnesses. It is axiomatic that credibility is a question for the trier of fact. We cannot say that the proof was "so unsatisfactory as to cause a reasonable doubt of guilt to appear". 50 Ill. 2d 141, 146.

For the reasons given, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*