THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL WAYNE JACOBS, Defendant-Appellant.

Third District   No. 77-467

Opinion filed January 5, 1979.

Robert Agostinelli, of Ottawa, and Theodore A. Gottfried, of Springfield, both of State Appellate Defender's Office, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by Daniel Wayne Jacobs, defendant, from conviction by the circuit court of Rock Island County for the offenses of

robbery and murder. A sentence of not less than 14 years nor more than 18 years in the penitentiary was imposed upon the conviction for the crime of murder.

The defendant at the time of allegedly committing the criminal offense with which he was charged was 15 years of age. Pursuant to a transfer from the juvenile court he was tried as an adult.

As garnered from information contained in a purported confession of the defendant and from testimony adduced during his trial, it was established that during the course of a robbery in a rooming house Hubert Archambault was bound and gagged and died by strangulation caused by the gagging. The defendant was accompanied by two accomplices during the commission of the crimes.

On February 18, 1977, the defendant, along with his mother, was taken to the Rock Island police station for interrogation. At this time he was informed of his rights although not within the presence of his mother. Later during the interrogation the defendant's mother joined him and inquired if a lawyer shouldn't be present. Sargeant Lawrence replied, "There's no sense in hiring, getting a lawyer. You don't [sic] you would get a public defender and they will just say keep your mouth shut." On this occasion the defendant denied any involvement in the crime and was released.

On February 19, 1977, sometime after 11 p.m., the defendant was arrested without a warrant by Illinois police officers in Iowa who had pursued him across the Centennial Bridge located in the Rock Island area. The defendant was taken from an automobile at gunpoint, handcuffed and returned to the Rock Island police station. He was again read his rights and initialled each of them. He replied in the negative as to whether he desired that his mother be present. It was during this course of interrogation that he was advised that another boy, one Sanchez, had received only three or four years imprisonment on a murder charge. He was also advised by Officer Lingafelter that he (Lingafelter) would do everything he could to help him. The defendant admitted his involvement in the crime of robbery and murder and the interrogation was continued by various policemen and representatives from the state's attorney's office until 3:30 a.m. The defendant's mother was notified that he was not in custody until 3:40 a.m. by which time the interrogation had been completed. Later in the day of February 20, 1977, an attorney for the defendant contacted the police department and requested that there be no further police contact with his client. Subsequent to this request the police had the defendant sign a typed version of his taped confession.

The signing of the confession was subsequently suppressed by the trial court which determined that it was in derogation of the defendant's

sixth amendment right to counsel. The confession itself however, was not suppressed but was introduced at trial.

It should be noted that the defendant has an I.Q. of 70 and although 15 years of age had a reading level of a third-grade elementary school pupil.

It may well be that in spite of having received *Miranda* warnings the totality of the circumstances, to-wit, the defendant's age, I.Q., reading level, circumstances of his arrest, the deprecatory advice as to need of counsel, the minimization as to the seriousness of the crime of murder by a minor, and the police officer's offer to help the defendant in any way he could, when considered in their entirety, might well require the suppression of all statements made by the defendant during his interrogation session with the law enforcement authorities of Rock Island County. See *State v. Cullison* (Iowa 1975), 227 N.W.2d 121; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.

We prefer, however, to make our determination regarding the suppression of statements made by the defendant in the light of the fact that they stemmed from an illegal arrest.

■■ The defendant was indeed illegally arrested since the Illinois police officers had no authority to arrest him in the State of Iowa except for that authority granted to them by the Uniform Fresh Pursuit Law of the State of Iowa. (See Iowa Code, ch. 756, §756.1 *et seq.* (1946).) The State argues that the defendant was returned to Illinois, tried for an Illinois offense, is appealing in Illinois, and that consequently Illinois law is determinative as to the question of the legality of his arrest. With this argument we do not agree. (See *District of Columbia v. Perry* (D.C. App. 1966), 215 A.2d 845.) In this cited case the District of Columbia Court of Appeals held that the only authority for a Maryland State police officer to arrest a person within the District of Columbia existed by the District Uniform Act on Fresh Pursuit. We cannot conjure up any reasoning that would support a different conclusion in the instant case. Under the Uniform Fresh Pursuit Law the law in the State where an accused is apprehended and arrested is to be applied in determining whether the arrest is legal or illegal.

The term "arrest" has a well defined meaning. The essence of an arrest "is a restriction on the right of locomotion or restraint of the person." (*Price v. United States* (D.C. App. 1956), 119 A.2d 718; *District of Columbia v. Perry* (D.C. App. 1966), 215 A.2d 845.) There is no contention in this appeal that the defendant was not arrested in the State of Iowa. His right of locomotion was curtailed and a restraint on his person occurred when under a threat of gunfire he was removed from an automobile, handcuffed and promptly taken to Illinois.

■■ Iowa law being applicable, we note that it mandates that an out-of-

State police officer, after effecting an arrest, shall without unnecessary delay take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the magistrate determines that the arrest was lawful, he shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the governor. See Iowa Code, ch. 56, §756.2 (1946).

None of the mandates set forth in the Uniform Fresh Pursuit Law of Iowa were complied with by the arresting officers from Illinois. They were both blithely and summarily ignored and the defendant immediately upon his return to Illinois was subjected to intensive interrogation. Compliance with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 694, 86 S. Ct. 1602, is not a "cure all" which per se establishes the voluntariness of all inculpatory in-custody statements by an accused. (See *State v. Cullison* (Iowa 1975), 227 N.W.2d 121.) We need not, however, make a determination in the instant case as to the voluntariness of the defendant's confession since his in-custody statements of an inculpatory nature stemmed from an illegal arrest. As the result of the statement stemming from an illegal arrest they were not rendered admissible merely because defendant had been given *Miranda* warnings prior to the making of the statements. (See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) In *Brown*, our United States Supreme Court states:

> "If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis v. Mississippi*, 394 U.S. 721, 726-727, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969) * * *." *Brown v. Illinois*, (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.

We note in the case of *Brown* that the United States Supreme Court did not hold that all statements made by an accused who was illegally arrested are involuntary per se, but the question as to their voluntariness must be answered on the facts of each case, and no single fact is dispositive. In determining whether a confession is obtained by exploitation of an illegal arrest, the giving of the warning required by the *Miranda* decision, the temporal proximity of the arrest, and confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. In the instant case we will not reiterate the circumstances of the defendant's arrest, the speedy and lengthy interrogation which ensued and the promises and statements of the interrogators. These factors coupled with the defendant's age and mental deficiencies resulted in conduct by the interrogators of such flagrant nature that the confessions made by the

defendant after his illegal arrest cannot be considered a product of his own free will.

For the reasons set forth the defendant's convictions for murder and robbery are reversed and this case is remanded to the circuit court of Rock Island County for retrial in which the defendant's confessions are to be suppressed.

Reversed and remanded with directions.

STOUDER, P. J., and ALLOY, J., concur.