THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL MALTBIA, Defendant-Appellee.

Third District    No. 3—94—0527

Opinion filed July 13, 1995.—Rehearing denied August 18, 1995.

HOLDRIDGE, J., specially concurring.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Michael Maltbia, was arrested and transported to a hospital in Macomb for medical treatment. Hospital personnel discovered illegal drugs on the defendant's person while administering medical treatment to the defendant. No police officers were present during his medical examination.

The defendant was charged with unlawful possession of cannabis (720 ILCS 550/4(b) (West 1992)), unlawful possession of a controlled substance (720 ILCS 570/402(a) (West 1992)), and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a) (West 1992)). The circuit court of McDonough County granted the defendant's motion *in limine*. The State appeals. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

At about midnight on December 19, 1993, Lieutenant Larry Carlson of the Macomb police department observed a car traveling in excess of the speed limit. Lt. Carlson pursued the car until it left the road and struck a tree. The defendant then exited the vehicle and fled on foot. Lt. Carlson and Officer Martin McClellan continued their chase on foot. Officer McClellan caught up with the defendant and ordered him to stop. After they restrained the defendant, the officers placed the defendant in handcuffs and told him that he was

under arrest. The defendant lost consciousness before the officers could put him into a squad car.

As a result, the officers summoned an ambulance. Before the ambulance arrived, Officer McClellan conducted a general pat-down search of the defendant for weapons. During the search, the officer checked the defendant's pockets, legs and shoes. However, he did not pat down the defendant's groin or pelvic area. After completing the search, Officer McClellan concluded that the defendant had no weapons.

When the ambulance arrived, paramedic Steven Hilligoss asked the officers to remove the handcuffs so the emergency medical personnel could place the defendant onto a spine board. The officers complied and helped put the defendant into the ambulance. After consultation with emergency room physician Layne Lovell, the paramedics transported the defendant to McDonough District Hospital. Lt. Carlson then drove his squad car to the hospital.

When the defendant arrived at the hospital, he had regained consciousness but remained largely unresponsive. Dr. Lovell and Nurse Joyce McCoy began administering medical treatment to the defendant. Shortly thereafter, Lt. Carlson arrived at the emergency room and again told the defendant that he was under arrest.

Lt. Carlson asked Dr. Lovell to draw a sample of the defendant's blood in order to ascertain his blood-alcohol level. He also told Dr. Lovell that the defendant was under arrest and was not to be released until an officer returned to the hospital to escort the defendant to the police station. When Lt. Carlson received the defendant's blood sample, he left the hospital and proceeded to the Macomb police station. There were no police officers in the emergency room while the defendant received further medical attention.

Dr. Lovell and Nurse McCoy continued to administer medical treatment to the defendant. A blood sample revealed no alcohol in the defendant's body. During the course of treatment, Dr. Lovell ordered paramedic Hilligoss and Nurse McCoy to catheterize the defendant for the purpose of obtaining a urine sample. Dr. Lovell wanted to analyze the defendant's urine for the presence of drugs and to check the kidneys for blood, which might indicate internal injuries.

In order to insert the catheter, Hilligoss and McCoy had to remove the defendant's pants and underwear. When they removed the defendant's clothes, Hilligoss found a small blue cloth bag (the bag) inside the defendant's underwear. Located on the outside of the bag was the emblem for Crown Royal whiskey. Hilligoss opened the bag and saw what he believed to be marijuana. McCoy also believed

the bag contained illicit drugs. McCoy and Hilligoss catheterized the defendant and obtained the urine sample. No police officers were present when the bag was discovered by the medical personnel.

Shortly after being catheterized, the defendant became combative. He attempted to get off the emergency room gurney and started screaming at the hospital personnel. The police were summoned to help subdue the defendant. Before the police arrived, the defendant was placed in hand and foot restraints.

After the defendant was restrained, McCoy and Hilligoss discussed whether to disclose the bag and its contents to the police. Dr. Lovell said the bag should be given to the police because he thought the defendant was under arrest.

Officer Robert Fitzgerald of the Macomb police department was the first to arrive at the hospital. Hilligoss showed the bag to Officer Fitzgerald. The officer found marijuana, cocaine, and small plastic bags inside the bag. Hilligoss told Officer Fitzgerald that they had found the bag in the defendant's pants while attempting to catheterize the defendant.

Officer McClellan and Lt. Carlson also responded to the call for help. Dr. Lovell told Officer McClellan that he was finished treating the defendant. The officer then handcuffed the defendant and transported him to the county jail. Thereafter, the defendant was charged with unlawful possession of a controlled substance, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of cannabis.

The defendant subsequently filed a motion *in limine*. In his motion, the defendant asked the trial court to bar all testimony concerning the bag and the drugs. He also asked the court to prohibit the introduction of either the bag or its contents into evidence during trial.

At the hearing on the defendant's motion *in limine*, Hilligoss testified that the last act of medical treatment the defendant received was the insertion of the catheter. McCoy said a urine sample was necessary to determine whether the defendant had been using any drugs and whether he had sustained any internal injuries.

Dr. Lovell testified that his initial diagnosis was alcohol abuse. However, he changed his diagnosis to substance abuse after the defendant was discharged. At the time he changed his diagnosis, Dr. Lovell had received the negative blood-alcohol results but had not yet received the results of the urine test. Dr. Lovell based his final diagnosis on the absence of alcohol and the defendant's actions in the emergency room.

Dr. Lovell said he was unaware of the contents of the bag when he gave it to the police. However, the doctor also testified that a police officer told him about the illegal drugs. Dr. Lovell said he might have ordered more tests on the defendant if he had known for certain the defendant was under the influence of drugs.

Based on this testimony, the trial judge issued a written opinion on June 14, 1994. The judge found the medical personnel considered the contents of the bag in deciding that no further treatment was necessary. The judge concluded that the nurse and paramedic discovered the bag when they removed the defendant's clothes during the medical treatment. For these reasons, the judge determined that the bag and its contents constituted information acquired by Dr. Lovell while he was treating the defendant. As a result, the judge found the illegal drugs and the bag were privileged information and should not have been disclosed to the police by Dr. Lovell.

The judge specifically found the defendant was not in custody when the medical personnel discovered the contraband. The judge noted in his analysis the absence of police officers in the emergency room during the time the defendant received medical treatment. Moreover, the judge found that the hospital personnel restrained the defendant solely to render medical treatment and not to hold the defendant in police custody. On June 21, 1994, the judge issued a written order granting the defendant's motion *in limine*. The order barred all testimony concerning the bag and the drugs and prohibited their introduction into evidence during trial.

On July 18, 1994, the trial court conducted a hearing on the State's motion to reconsider. The State argued that the drugs were not information which was necessary to treat the defendant. The State also argued that the inadvertent discovery of the drugs did not affect Dr. Lovell's treatment decisions. In rejecting these arguments, the judge further explained his previous ruling. The judge again determined that the defendant was not in police custody when the drugs were discovered by medical personnel. The judge specifically said that he did not believe Dr. Lovell's inconsistent testimony. As a result, the judge concluded that Dr. Lovell knew about the drugs before the defendant was discharged and the doctor used the information to diagnose the defendant as having a substance abuse problem. The judge also stated that the existence of the drugs explained why Dr. Lovell did not conduct any further tests and instead discharged the defendant into police custody. After explaining his reasoning, the judge reiterated his prior holding that the statutory physician-patient privilege applied and that no exception to the privilege would permit the use of either the bag or the drugs at

trial. On July 19, 1994, the State filed a timely notice of appeal and a certificate of impairment.

## II. DISCUSSION AND ANALYSIS

### A. APPLICABILITY OF THE PHYSICIAN-PATIENT PRIVILEGE

The State contends the illicit drugs found in the bag do not fall within the scope of any physician-patient privilege. In support of its position, the State argues that the discovery of the contraband was not the result of any medical procedure necessary to diagnose and treat the defendant. We do not agree with the State's analysis.

Section 8—802 of the Code of Civil Procedure provides in pertinent part:

> "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, *necessary to enable him or her professionally to serve the patient,* except only *** (8) to any department, agency, institution or facility which has *custody of the patient pursuant to State statute* or any court order of commitment ***." (Emphasis added.) (735 ILCS 5/8—802 (West 1992).)

On review of a motion to suppress evidence, the reviewing court must defer to the trial court's determination of the credibility of the witnesses and its resolution of conflicting testimony. (*In re M.M.* (1993), 255 Ill. App. 3d 300, 303, 627 N.E.2d 367, 369.) The trial court's ruling on a motion to suppress evidence will not be overturned on review unless it is manifestly erroneous. *People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311.

After hearing the evidence, the trial court made the following conclusions. Dr. Lovell ordered a urine sample only to determine whether the defendant had any drugs in his system and to check for internal injuries. Because the defendant was unresponsive, the medical personnel were directed by the doctor to remove the defendant's clothing in order to obtain the urine sample. The medical personnel discovered the contraband when they removed the defendant's pants and underwear. Dr. Lovell knew what was in the bag before it was given to the police. The trial court further found that Dr. Lovell used the information obtained from the bag to aid him in reaching his medical diagnosis. After reviewing the record, we accept as true the trial court's conclusion regarding the testimony of the witnesses.

■ We agree with the trial court that the discovery of the drugs on the defendant's person resulted from a medical procedure necessary to diagnose and treat the defendant. Therefore, the discovery of the bag occurred while Dr. Lovell was rendering necessary medical

treatment to the defendant. Accordingly, we conclude that the bag and the drugs contained therein constituted privileged information within the meaning of section 8—802.

## B. APPLICABILITY OF THE PRIVILEGE EXCEPTION

Our inquiry in this case does not end merely because we have concluded that the drugs found on the defendant's person fall within the statutory physician-patient privilege. We must now review whether any of the exceptions to the privilege apply.

Subsection (8) of section 8—802 indicates that otherwise privileged information may be disclosed to any agency which has custody of the patient pursuant to State statute. 735 ILCS 5/8—802(8) (West 1992).

The State argues that the defendant was in the "continuous custody" of the police during the entire medical examination. Therefore, according to the State, the exception outlined in subsection (8) applies and the medical personnel at the hospital properly disclosed the existence of the drugs to the police. Again, we do not agree with the State's analysis.

A peace officer may arrest a person when he has reasonable grounds to believe the person is committing or has committed an offense. (725 ILCS 5/107—2(1)(c) (West 1992).) "An arrest is made by an actual restraint of the person or by his submission to custody." 725 ILCS 5/107—5(a) (West 1992).

The essence of an arrest is a restriction of the arrestee's right of locomotion or a restraint of the arrestee. (*People v. Jacobs* (1979), 67 Ill. App. 3d 447, 449, 385 N.E.2d 137, 139-40.) The test for determining if an arrest has occurred is whether a reasonable person in the arrestee's position would conclude that he is not free to leave. (*People v. Melock* (1992), 149 Ill. 2d 423, 437, 599 N.E.2d 941, 946.) The court must also look to the officer's intent and whether the arrestee has been told that he is under arrest. *People v. Fair* (1994), 159 Ill. 2d 51, 66, 636 N.E.2d 455, 465.

The arrestee's subjective belief that he is under arrest is irrelevant in determining whether an arrest has actually occurred. (*People v. Reed* (1982), 104 Ill. App. 3d 331, 336, 432 N.E.2d 979, 983.) The law is clear that placing handcuffs on the arrestee constitutes arrest even if the police do not tell the arrestee that he is under arrest. (*People v. Gabbard* (1979), 78 Ill. 2d 88, 93, 398 N.E.2d 574, 576.) Conversely, the absence of police officers, display of weapons, physical touching, or other conduct which indicates that compliance with an officer's directives might be compelled, permits a conclusion that no arrest has occurred. *People v. McClom* (1994), 262 Ill. App. 3d 826, 833, 635 N.E.2d 677, 682.

Here, the police officers removed the handcuffs from the defendant's wrists before they placed him in the ambulance for transportation to the hospital. The defendant was never handcuffed again until the police returned to the hospital after being summoned by medical personnel. While the defendant was receiving treatment, he was physically restrained only for medical treatment. Nothing in the record indicates that the police exerted any compulsion or actual restraint on the defendant after Lt. Carlson left the hospital with the defendant's blood sample.

■ We find it significant that no police officers were present in the emergency room during the defendant's medical examination and treatment. Also, we have found nothing in the record or any legal authority to support the State's argument that the defendant was in the "continuous custody" of the police at the time the drugs were found. Accordingly, we agree with the trial court that the defendant was not under arrest when the medical personnel found the bag containing illegal drugs.

Also, based on the record, we must conclude that the defendant was not in the custody of an agency "pursuant to State statute." (See 735 ILCS 5/8—802(8) (West 1992); 725 ILCS 5/107—5(a) (West 1992).) Therefore, we find the exception to the statutory physician-patient privilege does not apply to the facts of this case. Furthermore, we conclude that Dr. Lovell did not adhere to his statutory duty of nondisclosure when he divulged to the police the bag and its contents. As a result, we find that the trial court properly granted the defendant's motion *in limine*.

For the reasons given, the judgment of the circuit court of McDonough County is affirmed.

Affirmed.

STOUDER, P.J., concurs.

JUSTICE HOLDRIDGE, specially concurring:

I concur with the opinion affirming the trial court's granting of defendant's motion *in limine*. I write, however, to express my belief that even if the defendant was in police custody pursuant to an arrest at the time the bag was found, subsection 8 of section 8—802 of the Code of Civil Procedure would not permit testimony from medical personnel concerning the bag and its contents at defendant's trial for unlawful possession of cannabis, unlawful possession of a controlled substance, or unlawful possession of a controlled substance with intent to deliver. I therefore disagree with the court's finding

significance in the fact that no police officers were present in the emergency room during the defendant's medical examination and treatment.

It is a general rule of statutory construction that exceptions within a statute, being designed to qualify or limit what is affirmed in the body of the statute, are to be strictly construed. (*Office of the Lake County State's Attorney v. Human Rights Comm'n* (1992), 235 Ill. App. 3d 1036; *People v. Lofton* (1977), 69 Ill. 2d 67.) Our legislature, by enacting section 8—802 of the Code of Civil Procedure, established a general prohibition against a physician's disclosure of privileged information in all instances except:

> "(1) *in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide,* (2) *in actions, civil or criminal, against the physician for malpractice,* (3) with the expressed consent of the patient, or in case of his or her death or disability, of his or her personal representative or other person authorized to sue for personal injury or of the beneficiary of an insurance policy on his or her life, health, or physical condition, (4) *in all actions brought by or against the patient,* his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate *wherein the patient's physical or mental condition is an issue,* (5) upon an issue as to the validity of a document as a will of the patient, (6) *in any criminal action where the charge is either first degree murder by abortion, attempted abortion or abortion,* (7) *in actions, civil or criminal, arising from the filing of a report in compliance with the Abused and Neglected Child Reporting Act,* [citation] (8) to any department, agency, institution or facility which has custody of the patient pursuant to State statute or any court order of commitment, (9) *in prosecutions where written results of blood alcohol tests are admissible pursuant to Section 11—501.4 of the Illinois Vehicle Code* [citation] or (10) *in prosecutions where written results of blood alcohol tests are admissible under Section 5—11a of the Boat Registration and Safety Act* [citation]." (Emphasis added.) 735 ILCS Ann. 5/8—802 (Michie 1995).

I note that 7 of the 10 exceptions to the physician-patient privilege address when a physician may testify without the patient's consent in a criminal proceeding. I believe that these are the *only* circumstances under which medical personnel covered by the physician-patient privilege may testify to privileged information in a criminal proceeding. Since the criminal proceeding against the defendant did not involve any of the situations listed in these seven exceptions, I would hold that the physician-patient privilege would prevent testimony from these medical personnel, regardless of the defendant's custody status.

I also note that subsection 8 provides an exception to allow physicians to disclose privileged information concerning patients *to* a department, institution, etc., which has court ordered or statutory custody of the patient. Although there are no reported decisions interpreting subsection 8, it would appear from a reading of the plain language that this exception was intended to permit disclosure of otherwise privileged information *to* the patient's custodian. This exception does not address disclosing privileged information in criminal proceedings and should not be used to expand the circumstances under which privileged information may be disclosed in a criminal proceeding.

Finally, I note that had a police officer been present in the emergency room, personally observed the bag being removed from the defendant, and personally observed the contents of the bag, that officer could testify to his own observations.

For the reasons stated, I concur in the judgment of the court.