THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT DALE WILBER, Defendant-Appellant.

Fourth District   No. 4—95—0718

Argued February 21, 1996.—Opinion filed April 19, 1996.

Gary F. Geisler (argued), of Geisler Law Offices, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following a stipulated bench trial, defendant Robert D. Wilber was convicted of reckless homicide (720 ILCS 5/9—3(e) (West 1994)) and aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(d)(2) (West 1994)). He was sentenced to concurrent terms of eight years' and three years' imprisonment. Defendant now appeals, arguing the trial court (1) erred in allowing the introduction of the blood-alcohol test results contained in his medical records; (2) erred in allowing the testimony of paramedics who treated him; and (3) abused its discretion in sentencing. We disagree and affirm.

The stipulated facts showed that at approximately 7 p.m. on November 9, 1994, defendant was driving his sport-utility vehicle over Staley Bridge, a four-lane highway, in Decatur, Illinois. After passing several vehicles at a high rate of speed, defendant swerved

into the left lane and collided with a Mercury Grand Marquis that was stopped behind a pickup truck. John Decesaro, who sat in the backseat of the Mercury, suffered a serious head injury which left him in a coma for seven days. His eight-year-old daughter, Dana, died as a result of her head injuries.

Paramedics Bill Kallenbach and Ingred Kimnitz arrived at the scene, examined defendant, and transported him to St. Mary's Hospital (St. Mary's). Both paramedics noticed that defendant had bloodshot eyes and Kallenbach detected an odor of alcohol. Defendant informed the paramedics that he "had 6 to 8 beers prior to the collision."

When defendant arrived at the emergency room of St. Mary's, Dr. Richard Wolfe noticed an odor of alcohol on defendant's breath and ordered that a blood test be performed. The blood test was taken at 8:10 p.m. and sent to the hospital laboratory. The sample showed defendant's blood-alcohol concentration at 0.172 grams per deciliter.

Officer Dan Street of the Decatur police department spoke briefly with defendant at the scene of the accident and interviewed him later at St. Mary's, where he noticed defendant's eyes were glassy and bloodshot, his speech slow and deliberate, and that he smelled of alcohol. Defendant stated that he had consumed four to five beers. Street placed defendant under arrest for DUI at 10:15 p.m. At 10:35 p.m., defendant consented to a blood test, which was taken at St. Mary's and sent to the State Police crime laboratory. This analysis showed defendant's blood-alcohol concentration to be 0.093 grams per deciliter.

On November 10, 1994, the State obtained a search warrant to seize from St. Mary's "[a]ny and only those medical records including but not limited to any lab results which show or tend to show the blood[-]alcohol content of [defendant] *** who received emergency room treatment on or about November 9, 1994[,] as a result of an automobile accident." Officer Street executed the search warrant on St. Mary's and acquired the entire medical record (18 pages) relating to defendant's treatment following the accident. Included in the record were the results of the first blood-alcohol test conducted by St. Mary's.

On November 15, 1994, defendant was charged by information of two counts of reckless homicide and two counts of aggravated DUI.

On November 23, 1994, defendant filed a motion to suppress the medical records, arguing that the records were protected under the physician-patient privilege (735 ILCS 5/8—802 (West 1994)). On December 13, 1994, defendant filed a motion in limine, claiming that the testimony of the paramedics should be prohibited under the physician-patient privilege as well.

On February 17, 1995, the trial court denied defendant's motion *in limine* but granted defendant's motion to suppress, holding that although the search warrant was limited to blood-alcohol test results, the warrant was violated when defendant's entire record was seized. Further, the issuing court failed to conduct *in camera* proceedings to determine the existence of privileged records and defendant was precluded from objecting to the release of his records. Thus, the records were ordered returned to defendant.

On March 29, 1995, the State issued a subpoena *duces tecum* upon the records custodian at St. Mary's. The subpoena commanded that the custodian appear in court on May 3, 1995, and produce medical records relating to any blood or urine tests conducted on defendant following the accident. On April 6, 1995, defendant filed a motion to quash the subpoena, which the trial court denied. On May 9, 1995, the trial court conducted an *in camera* inspection of the medical records and found that they were not privileged.

On June 23, 1995, a bench trial was held upon a written stipulation of facts, offered and accepted by the court subject to the objections raised in pretrial motions. The trial court found defendant guilty of reckless homicide and aggravated DUI. At the sentencing hearing, the trial court learned that defendant had previously been convicted of DUI and received court supervision. The trial court then sentenced defendant to concurrent terms of eight years' and three years' imprisonment. Defendant filed a post-trial motion on August 4, 1995, which the trial court denied. This timely appeal followed.

We first address defendant's contention that the trial court erred in allowing the introduction of the blood-alcohol test results contained in his medical records. He maintains that all information contained in the medical records should have been suppressed.

■ Blood-alcohol test results are both discoverable and admissible under section 11—501.4 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.4 (West 1994)). See *People v. Hathaway*, 263 Ill. App. 3d 426, 635 N.E.2d 148 (1994); *People v. Bates*, 169 Ill. App. 3d 218, 523 N.E.2d 675 (1988). Under this provision, the blood-alcohol evidence contained in defendant's medical records was admissible in this case. However, extrajudicial production and inspection of such evidence is improper. *People v. Hart*, 194 Ill. App. 3d 997, 1002, 552 N.E.2d 1, 3 (1990). The appropriate procedure for obtaining medical records is through the use of a subpoena *duces tecum* commanding that the records be delivered to the court. See *People ex rel. Fisher v. Carey*, 77 Ill. 2d 259, 265, 396 N.E.2d 17, 19-20 (1979). This allows the court to conduct an *in camera* inspection to determine whether the records are privileged and also provides an opportunity for the defen-

dant to challenge the release of the records. *Fisher*, 77 Ill. 2d at 265, 396 N.E.2d at 19-20.

■ Defendant points out that the State initially obtained the medical records improperly through the use of a search warrant. Thus, he contends the State should not have been allowed to acquire the same records later through the use of a subpoena *duces tecum*. For support, he relies upon *People v. Kaiser*, 239 Ill. App. 3d 295, 606 N.E.2d 695 (1992). However, we find the present case is distinguishable from *Kaiser* and more comparable to our decision in *Hathaway*.

In *Kaiser*, the reviewing court affirmed the suppression of blood tests obtained under a second subpoena after the State's use of an improper initial subpoena. The initial subpoena commanded the production of " '[a]ny and all medical records pertaining to [defendant's] hospitalization' " (*Kaiser*, 239 Ill. App. 3d at 296, 606 N.E.2d at 696) and provided for no *in camera* inspection to allow the court to determine if the records were privileged. As a result, the trial court granted defendant's motion to quash the subpoena. However, the State had already reviewed the records and became aware that St. Mary's conducted the blood tests. Thus, it issued a second subpoena requesting defendant's medical records and blood tests. As a sanction, the trial court suppressed any evidence acquired from the medical records, as it had been revealed only as a result of the improper initial subpoena. On appeal, the reviewing court held that the first subpoena was nothing more than a "fishing expedition" and, thus, the evidence sought by the second subpoena was "tainted" and properly suppressed. *Kaiser*, 239 Ill. App. 3d at 303-04, 606 N.E.2d at 700-01.

In *Hathaway*, however, this court reversed the suppression of blood tests obtained by a second subpoena after the use of an improper initial subpoena. The State issued a subpoena requesting "all medical records relating to defendant's blood-alcohol analysis," and the hospital delivered the records directly to the State. *Hathaway*, 263 Ill. App. 3d at 427, 635 N.E.2d at 149. Defendant moved to suppress the blood test results and the trial court agreed, as no *in camera* proceedings were conducted. The State then issued a second subpoena and the hospital delivered the medical records—in a sealed condition—to the trial court. Again, the trial court granted defendant's motion to suppress the blood test evidence. On review, this court held that the State did not use the initial subpoena as a "fishing expedition" to learn of the blood test; the State was already aware of the blood test. *Hathaway*, 263 Ill. App. 3d at 431, 636 N.E.2d at 151. Thus, while the State failed to follow appropriate procedure in issuing the initial subpoena and conducted an extrajudicial exami-

nation of the records, the blood test evidence obtained through the use of the second subpoena should not have been suppressed, as it was not tainted. *Hathaway*, 263 Ill. App. 3d at 430-31, 635 N.E.2d at 150-51.

In the present case, it is clear that the search warrant was not a "fishing expedition" used by the State to uncover relevant evidence. The search warrant was specifically limited to documents relating to blood-alcohol test results. Further, there is nothing in the record to show that the State was unaware of the blood test prior to its extrajudicial review of the medical records. While we do not approve of the improper procedure by which the State initially obtained the medical records, it did not "taint" the evidence later acquired through the subpoena *duces tecum*. Accordingly, we find the blood-alcohol test results were properly allowed by the trial court. However, we strongly recommend that the State review the proper procedure for obtaining medical records in the future.

Defendant next argues that the trial court erred in failing to grant his motion *in limine*, which sought to prohibit the testimony of the paramedics that treated him. He maintains that because a paramedic provides medical treatment and services to a patient, the observations and information obtained by paramedics are protected under the physician-patient privilege (735 ILCS 5/8—802 (West 1994)).

■ The purpose of the physician-patient privilege is to encourage full disclosure in order to ensure the best diagnosis and treatment for the patient. *Moore v. Centreville Township Hospital*, 246 Ill. App. 3d 579, 586, 616 N.E.2d 1321, 1327 (1993), *rev'd on other grounds*, 158 Ill. 2d 543, 634 N.E.2d 1102 (1994). Further, the privilege has been applied not only to physicians, but also to nurses and hospital staff. See *Village of Arlington Heights v. Bartelt*, 211 Ill. App. 3d 747, 750, 570 N.E.2d 668, 671 (1991); *Parkson v. Central Du Page Hospital*, 105 Ill. App. 3d 850, 435 N.E.2d 140 (1982). Therefore, we agree with defendant that a physician-patient relationship can be established between paramedics and the patients they treat. See *People v. Maltbia*, 273 Ill. App. 3d 622, 627-28, 653 N.E.2d 402, 406 (1995).

■ Under section 8—802(9) of the Code of Civil Procedure (Code) (735 ILCS 5/8—802(9) (West 1994)), an exception to the physician-patient privilege exists "in prosecutions where written results of blood alcohol tests are admissible pursuant to Section 11—501.4 of the Illinois Vehicle Code." In the present case, the requirement of section 8—802(9) of the Code is met. Defendant was prosecuted for reckless homicide and DUI, and his blood-alcohol test results were admissible pursuant to section 11—501.4 of the Vehicle Code. Accord-

ingly, the physician who treated defendant at the hospital could have testified fully about his observations and any information he obtained from defendant without being limited, as defendant claims, to testifying only about the results of the blood-alcohol test. Further, because the physician-patient privilege extends to nurses and paramedics, section 8—802(9) would apply to them as well. Therefore, defendant's statement to the paramedics was not protected, as it fell under the exception found in section 8—802(9) of the Code.

Additionally, this case could also be decided under section 8—802(4) of the Code. 735 ILCS 5/8—802(4) (West 1994). Section 8—802(4) provides for an exception to the physician-patient privilege "in all actions brought by or against the patient, *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8—802(4) (West 1994). In this regard, we find the present case comparable to *People v. Krause*, 273 Ill. App. 3d 59, 651 N.E.2d 744 (1995).

In *Krause*, the defendant was driving a motorcycle and collided with a pedestrian. While being treated at the scene, defendant informed a paramedic that "he had drunk six beers." *Krause*, 273 Ill. App. 3d at 60, 651 N.E.2d at 745. When charged with DUI, defendant asserted that the physician-patient privilege applied to his statement to the paramedic, and the trial court agreed, granting his motion *in limine*. On appeal, the third district reversed, concluding the statement was not protected as it fell under the exception found in section 8—802(4) of the Code (see 735 ILCS 5/8—802(4) (West 1992)). *Krause*, 273 Ill. App. 3d at 63, 651 N.E.2d at 747.

We agree with the *Krause* court that the language "in all actions" demonstrates that the exception is not limited to civil actions, but extends to criminal actions as well. *Krause*, 273 Ill. App. 3d at 62, 651 N.E.2d at 746. Further, because defendant's mental and physical conditions are directly at issue in a DUI case, his statement to the paramedics that he "had 6 to 8 beers prior to the collision" falls within the exception. Thus, the statement was not protected under the physician-patient privilege. Accordingly, the trial court did not err in denying the motion *in limine*.

■ Defendant's final contention is that the trial court abused its discretion in sentencing. He points to statistics that show the average sentence imposed for reckless homicide is about six years, as opposed to the eight-year sentence handed down in this case. Further, defendant maintains the accident could have occurred if he had been sober and driving within the speed limit. Thus, he claims the imposed sentences are disproportionate to the nature of the case.

It is well settled that a sentence within the statutory limits will not be disturbed on review absent an abuse of discretion, *i.e.*, unless

it is manifestly disproportionate to the nature of the case. *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883 (1977); *People v. Christy*, 271 Ill. App. 3d 966, 967, 650 N.E.2d 12, 14 (1995). Where the influence of alcohol is a factor, reckless homicide is a Class 2 felony punishable by a term of imprisonment "not less than 3 years and not more than 14 years." 720 ILCS 5/9—3(e) (West 1994). Aggravated DUI is a Class 4 felony punishable by a term of imprisonment "not less than one year and not more than 3 years." 625 ILCS 5/11—501(d)(2) (West 1994); 730 ILCS 5/5—8—1(a)(7) (West 1994).

Here, defendant received an eight-year sentence for the reckless homicide conviction and a three-year sentence for the aggravated DUI conviction. Thus, the sentences imposed by the trial court fell within the statutory limits. Furthermore, the sentences were not manifestly disproportionate to the nature of the case. This case is tragic. Following his first DUI, defendant received court supervision—in essence, a second chance. However, he failed to change his ways and again chose to drive while intoxicated. As a result, an eight-year-old girl lost her life and her father is permanently injured. We find no abuse of discretion in the sentences imposed by the trial court.

For these reasons, we affirm the judgment of the circuit court of Macon County.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.