GAUNT & HAYNES, INC., Plaintiff-Appellee, v. MORITZ CORPORATION, Defendant-Appellant.

Fifth District No. 5—83—0798

Opinion filed September 30, 1985.—Rehearing denied December 23, 1985.

John W. Leskera and Eric C. Young, both of Dunham, Boman & Leskera, of East St. Louis, for appellant.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

This appeal is from a judgment entered against defendant in the amount of $185,000 following a jury trial in an action for damages in the circuit court of Effingham County.

Plaintiff, Gaunt & Haynes, Inc., owned and operated a grocery store in Effingham. Defendant, Moritz Corporation, was the contractor under contract with the State of Illinois to widen the street on which plaintiff's store was located. As a result of the street construction by defendant, access to plaintiff's store was interrupted; however, the degree of the impairment of access was disputed. Plaintiff's business suffered a loss of customers and revenue as a result of being deprived of access to its premises; however, the amount of damages attributable to the loss of access was also disputed. Plaintiff's business eventually failed within five months after construction was completed. Plaintiff brought the instant suit contending that defendant was negligent in failing to allow for sufficient access to plaintiff's property during construction. Plaintiff also sought punitive damages for wilful and wanton misconduct. The jury denied plaintiff punitive damages but returned a verdict in favor of plaintiff in the amount of $185,000 based on defendant's negligence.

On appeal, defendant first contends that plaintiff's action is one which seeks recovery in tort solely for economic loss and is therefore prohibited under the rationale of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. However, we conclude that plaintiff's action more properly is characterized as one for damages for loss of access to its property. Such actions have long been sanctioned. See *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 271, 449 N.E.2d 852, 855-56; *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131, 139,

340 N.E.2d 12, 15-16; *Rigney v. City of Chicago* (1881), 102 Ill. 64, 78.

■ Defendant, relying on *Chicago Flour Co. v. City of Chicago* (1909), 243 Ill. 268, 90 N.E. 674, next contends that the consequent temporary loss of access to property occasioned by the construction of a public improvement is not compensable. While the court in *Chicago Flour Co.* determined that a contractor working under a governmental contract is not liable for direct or consequential injuries resulting as a necessary incident from performance of the work in a proper manner (243 Ill. 268, 271, 90 N.E. 674, 675-76), it is well settled that this rule of nonliability does not exempt a contractor from liability where the injury arises from the contractor's negligent performance of the work. (*Smith v. General Paving Co.* (1974), 24 Ill. App. 3d 858, 861, 321 N.E.2d 689, 691; see also 64 Am. Jur. 2d *Public Works & Contracts* sec. 135 (1972).) In view of the fact that defendant was charged with and found guilty of negligence, defendant properly may be held liable for the resulting damage.

■ Defendant next contends that the circuit court erred in not granting its motion for judgment notwithstanding the verdict because the jury's verdict was against the manifest weight of the evidence. At the outset, we note that motions for directed verdict or for judgment notwithstanding the verdict are properly granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

In this regard, liability based on negligence arises only if the defendant has committed a breach of duty owed to persons whose injuries proximately resulted from the breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116, 118-19; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1044, 462 N.E.2d 502, 504.) Defendant does not dispute the existence of a legal duty not to unreasonably interfere with plaintiff's access to its store. Indeed, the contract governing the street project expressly provided: "Whenever a commercial property is served by two or more entrances, one entrance shall be left open at all times." However, defendant urges: (1) that there is insufficient evidence to support the jury's finding that defendant committed a breach of this duty, and (2) that even if such a breach occurred, there is insufficient evidence to support the jury's finding that the breach proximately caused the injury claimed.

Both the question of whether there has been a breach of duty and the question of whether the breach proximately caused an injury are

factual determinations. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 119; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1044-45, 462 N.E.2d 502, 505.) We conclude that the evidence introduced at trial presented a disputed question as to both the existence of a breach of duty and whether the breach proximately caused the injury claimed. As such, the resolution of the questions were within the sole province of the jury. The grant of judgment notwithstanding the verdict under such circumstances would have been improper; therefore, the trial court's refusal to do so was not error.

With regard to the question of whether there was a breach of duty, plaintiff presented witnesses who testified that plaintiff's store was denied access for an unreasonable length of time during the construction. Plaintiff's president, the manager of the shopping center where plaintiff's store was located, owners of nearby businesses and a traffic-engineering consultant testified on plaintiff's behalf. Rather than our reiterating specific testimony, suffice it to state that all of these witnesses testified to the effect that plaintiff's store was deprived of adequate access during construction and that the lack of access resulted in a loss of customers.

Defendant urges that the testimony of these witnesses was "successfully rebutted by objective and impartial expert witnesses" who testified on defendant's behalf that adequately designed temporary accesses to plaintiff's property were installed and maintained. However, it is well established that a jury's verdict cannot be set aside merely because there is conflicting evidence on factual questions. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 553, 437 N.E.2d 872, 879-80.) Such contradiction affects only the weight to be given the testimony. As such, the resolution of contradictory testimony is not a function of a reviewing court, which cannot reweigh the evidence. That task rests with the jury. Where, as here, credible evidence supports the jury's finding, this court may not substitute our judgment for that of the jury. *Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572, 576.

With regard to the question of whether the breach proximately caused the injury claimed, while defendant acknowledges that plaintiff suffered a decline in customers and revenue, defendant contends that other factors besides its conduct could have contributed to this decline. Defendant draws our attention to the fact that during the period in question, two additional grocery stores opened in the same market area and that plaintiff was engaged in a price war with its largest competitor. Defendant contends that in order to find that defendant's

conduct proximately caused the injury, the portion of total damages sustained which is properly attributable to defendant's conduct was required to be ascertained. It urges that it is impossible accurately to assign the decline in plaintiff's business among the various causes. In this regard, defendant also maintains that owing to the complexity of apportioning damages, expert testimony should have been required to establish that defendant's conduct was causally related to plaintiff's injury. In support of this latter contention, defendant relies upon *Hyatt v. Cox* (1965), 57 Ill. App. 2d 293, 206 N.E.2d 260, in which the court stated that in situations in which the determination of causal relationship involves a special skill or trade or knowledge of science not common to the average juror, the testimony of laymen not possessing the special skill or knowledge may be insufficient to establish a *prima facie* showing of a causal relationship. Defendant thus urges that plaintiff failed to meet its burden of proof by failing to present any such expert testimony.

■ We conclude that the agreement advanced by defendant confuses the problems involved with the determination of proximate cause and the problems involved in apportioning damages among multiple causes. Once the trier of fact has made a determination that a defendant's conduct has been the proximate cause of damage suffered by a plaintiff, a further question then may arise as to the portion of the total damage sustained which properly may be assigned to the defendant's conduct as distinguished from other causes. (*Cf. Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 23, 310 N.E.2d 9, 11-12.) We agree with the defendant that the jury did not expressly apportion damages among the various possible causes. However, there is ample testimony in the record to the effect that the lack of access to plaintiff's store caused a substantial decline in plaintiff's customers and revenue. We believe that such conclusion requires no special expertise. Based on this evidence, the jury was entitled to find that defendant's conduct proximately caused an injury to plaintiff.

■ We reject defendant's further contention that the trial court erred in refusing to instruct the jury that the doctrine of comparative negligence was applicable to the case at bar. The recovery sought by plaintiff was limited to recovery of those damages resulting from the loss of access to its property. The evidence that two additional grocery stores opened nearby and that plaintiff engaged in a price war with its largest competitor has no relevancy as to whether plaintiff suffered a loss which was proximately caused by defendant's interruption of its access. These facts could only relate to the amount of damages resulting from the loss of access. (*Cf. Clarkson v. Wright* (1985),

108 Ill. 2d 129 (failure to use seat belt).) We therefore conclude that, as a matter of law, these facts do not constitute contributory negligence regarding plaintiff's loss of income relating to the interruption of access to its premises.

Regarding the necessity of apportionment of the damages suffered by plaintiff, if a rational basis can be found for some reasonable apportionment which would limit a defendant's liability to that part of the damages that defendant has in fact caused, such a division should be undertaken. However, where no such basis can be determined and any division would be arbitrary, the only recourse is to hold defendant liable for the entire loss, notwithstanding the fact that other causes contributed. (Prosser, Torts sec. 52, at 313-14 (4th ed. 1971).) Defendant by its own argument acknowledges that we are here faced with this latter situation.

■ Having been found guilty of a breach of a duty owed plaintiff, which breach was found to have proximately caused plaintiff's injury, in the absence of a rational basis on which to apportion the damages suffered by plaintiff, defendant may properly be held liable for the entire loss suffered by plaintiff.

■ Defendant also contends that the circuit court erred in not granting its motion for directed verdict on plaintiff's claim for punitive damages. Defendant further contends that it was prejudiced by the trial court's submission of the issue of punitive damages to the jury even though plaintiff's prayer for punitive damages was denied by the jury. Defendant argues that there was insufficient evidence presented to warrant the submission of the issue to the jury. Defendant urges that, as a consequence, the submission of the issue to the jury, coupled with the highly prejudicial nature of what little evidence there was on the issue, improperly influenced the jury's award of damages on the negligence count.

The submission of the issue of punitive damages to the jury is a matter within the trial court's discretion, and the trial court's determination will not be disturbed absent an abuse of that discretion. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 937, 419 N.E.2d 578, 596.) Further, as we indicated previously, motions for directed verdict are properly granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Such may not be said of the evidence in the case at bar. Plaintiff introduced evidence that defendant's president had threatened to

close all access to plaintiff's business and that thereafter the temporary accesses to plaintiff's business fell into a state of disrepair. The record further indicates that plaintiff was among the last businesses affected by the construction to have its permanent entrances completed.

While we recognize, as did the trial court, that there was not a great amount of evidence on the issue of punitive damages, we too conclude that there was nonetheless sufficient evidence introduced to allow the issue to go to the jury. Since on appeal we may not reweigh the evidence admitted, we cannot say that the trial court abused its discretion in submitting the issue of punitive damages to the jury.

■ Defendant next takes issue with certain evidentiary rulings made by the trial court. The first of these involves the admission of a number of photographs of the construction site. At the time the photographs were offered into evidence, plaintiff did not provide the exact times the photographs were taken; however, approximate times were provided and there was testimony to the effect that the photographs fairly represented the construction site at the various stages in the construction. Defendant argues that the testimony as to the time at which the photographs were taken was required to be more precise. We do not agree.

The admission of photographs into evidence has been held to be within the sound discretion of the trial court. (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 299, 430 N.E.2d 14, 19; *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 796, 370 N.E.2d 564, 574.) Furthermore, all that is necessary in order for a photograph to be admitted into evidence is the testimony of a witness, who has personal knowledge of the photographed object at a time relevant to the litigation, that the photograph being offered is a fair and accurate representation of the object at the relevant time. (See Cleary & Graham, Illinois Evidence sec. 401.8, at 125 (4th ed. 1984).) Judged by this standard, a sufficient foundation for the admission of the photographs in question was laid; therefore, the trial court did not abuse its discretion in allowing them into evidence.

■ We also reject defendant's next contention that the circuit court erred by refusing to allow three witnesses to testify concerning an increase in sales volume at two nongrocery stores located in the same shopping center with plaintiff's grocery store. The record indicates that the trial court dealt at length with the problem involved in the introduction of such evidence and held that there was no sufficient foundation established to permit a comparison between the sales of the nongrocery stores and plaintiff's store. The court, in recogni-

tion of the distinction between evidence of increased sales in other stores and evidence of the increase or decrease in the number of customers using the shopping plaza, permitted defendant to introduce evidence that there was no decrease in the number of customers using the parking area of the shopping center. Furthermore, the court granted defendant's motion *in limine* prior to trial which precluded plaintiff from presenting evidence that certain other businesses had failed during defendant's construction period. In excluding defendant's contrary testimony concerning increased sales in other businesses, the court stated that its rulings regarding the effect of the construction on other businesses would be required to "cut both ways" and that the court was going to be equal in the application of its rule. In this regard, defendant should not be permitted to complain of specific error when to do so would be inconsistent with a position previously taken by it. *Cf. Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817.

Defendant also contends that the circuit court erred in admitting evidence that defendant was ordered by an official of the Illinois Department of Transportation to install an additional temporary entrance and make repairs to the existing entrance. Defendant urges that such evidence constituted evidence of subsequent remedial measures which has long been held to be inadmissible to prove negligence. (See *Hodges v. Percival* (1890), 132 Ill. 53, 23 N.E. 423.) However, as these subsequent remedial measures were required by a governmental authority, and thus not a voluntary act by defendant, the policy underlying the general exclusionary rule relating to subsequent remedial measures does not apply here. See *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 19, 404 N.E.2d 823, 834.

The last evidentiary ruling with which defendant takes issue concerns the trial court's admission into evidence of a quarterly profit and loss summary of plaintiff's operations for the 12-week period ending June 17, 1978. This exhibit evidenced an operating profit of $46,000. Plaintiff's president admitted that the reported revenues in the summary were overstated and that profits for the period were actually $24,000 to $25,000 less than indicated in the summary. Despite these inaccuracies, the trial court admitted the summary into evidence, holding that the inaccuracies affected only the summary's weight and not its admissibility. Defendant contends that the summary's admitted inaccuracies prevent its admission.

Plaintiff contends that the summary was properly admitted as a business record as is permitted by Supreme Court Rule 236(a) (87 Ill. 2d R. 236(a)). We do not agree. As stated by the court in *People ex*

*rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 448 N.E.2d 950:

> "The business records rule simply recognizes that records of an act, occurrence or event routinely made at the time of the transaction, or within a reasonable time thereafter are normally sufficiently reliable in nature to be admissible in evidence despite their hearsay character. The credibility of any business record depends upon the regular, prompt and systematic nature of the entry and the fact that it is relied on in the operation of a business. [Citations.] A crucial aspect is that the entries be prepared as a regular part of the business. [Citation.] 'The entry offered must of course be a part of a series of entries or reports, not a casual or isolated one.' [Citation.] But even if we accept the Director's contention that these records were prepared in the regular course of business, that alone is not sufficient to warrant their admissibility. To be admissible, the records must also be records of an act, transaction, occurrence or event made at the time of the event or within a reasonable time thereafter [citation], and it must be the regular course of business to make such records at the time of the events to which they relate or within a reasonable time thereafter. [Citations.] For this reason summaries often are not admissible as business records. [Citations.]" 114 Ill. App. 3d 334, 344, 448 N.E.2d 950, 957.

Plaintiff in its brief has not contended that the summary was made at or near the time of the transactions summarized and indeed by the very nature of a summary it appears certain that such a showing could not have been made. Furthermore, since the probability of trustworthiness is the rationale for the business records rule, the admitted inaccuracy of this summary further undermines its reliability.

Because plaintiff sought recovery for lost profits and introduced this summary, or testimony based thereon, as the only evidence that plaintiff's operations ever operated at a profit, we conclude that the summary's erroneous admission constituted reversible error. It is therefore necessary to remand this cause to the trial court for a new trial. However, on remand, only the issue of damages shall be relitigated. The jury's verdict on the question of liability is amply supported by the evidence and the issues of damage and liability in this cause are separate and distinct. (See *Robbins v. Professional Construction Co.* (1978), 72 Ill. 2d 215, 224, 380 N.E.2d 786, 790.) Accordingly, we reverse the judgment of the trial court and remand the instant cause for a new trial on the question of damages only. On re-

mand, defendant will be at liberty to present evidence that a portion or all of the damages sought by plaintiff were not attributable to defendant's negligence.

Affirmed in part, reversed in part and remanded with instructions.

KARNS and HARRISON, JJ., concur.