MELVIN PEARL, Ex'r of the Estate of Morris Pearl, Deceased, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (5th Division)    No. 87—1219

Opinion filed December 16, 1988.

Joyce A. Hughes, of Chicago Transit Authority, of Chicago (Edward J. Egan, of counsel), for appellants.

Richard S. Fleisher, of Karlin & Fleisher, and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

On July 5, 1985, plaintiff's decedent, Morris Pearl, after stepping into the pedestrian crosswalk at the southwest corner of State and Washington Streets in Chicago, was struck by a Chicago Transit Authority (CTA) bus driven by Henry Billups. Pearl later died from injuries sustained. Following a jury trial for survival and wrongful death claims (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6; Ill. Rev. Stat. 1985, ch. 70, par. 2), judgment was awarded against defendant in the amount of $437,295.26, after reduction for Pearl's comparative negligence. Defendant CTA appeals from that judgment, contending that the trial judge improperly permitted testimony of CTA supervisory personnel relating to a post-accident review of Billups' driving, his subsequent suspension, and retraining as admissions of negligence against defendant.

We affirm.

We summarize below trial testimony pertinent to our disposition.

At trial, David Hinman, Lester Morton, and Wayne C. Williams testified during plaintiff's case as adverse witnesses.

David Hinman, a CTA garage superintendent and acting area superintendent at the time of the accident in issue, testified that on July 9, 1985, he conducted a review of the accident involving plaintiff's decedent and prepared a disciplinary report and a suspension notice. Hinman stated that the notice of suspension recited that Billups had violated two rules contained in the CTA bus system rule book: rule B 4.3.1, pertaining to observation of intersection traffic signals and proceeding through intersections, and rule 4.6.1, requir-

ing general adherence to defensive driving practices. With regard to the above rules, Hinman testified that, based on his past experience as a bus operator, a safe rate of speed for a bus proceeding through the intersection at Washington and State Streets at 3 to 4 p.m. would be three to five miles per hour.

Hinman stated that before being returned to service, Billups participated in a retraining program. Hinman was allowed to testify to his review of a written performance check filled out by the instructor who conducted the retraining program. Hinman stated that prior to that evaluation, Billups met CTA instruction department requirements to drive and operate a bus safely. Hinman admitted that in a deposition taken at the period of Billups' retraining, Hinman had stated that, based on the determination that Billups only had a marginal appreciation of those operating procedures cited in rules 4.3.1 and 4.6.1, Billups should not have been permitted to drive a CTA bus.

On cross-examination, Hinman stated that, in his opinion, on the day of the accident, Billups was qualified to operate a CTA bus. Hinman also stated that when an accident involving a pedestrian occurs, a CTA review is conducted.

Lester Morton, a former bus operator, supervisor, operator instructor, and, at the time of trial, controller for the CTA, testified that he prepared the special occurrence report of the subject accident. In response to questions concerning rule 4.6.1, Morton admitted that in a prior deposition he had stated that he believed Billups may not have been paying close enough attention to pedestrian traffic when the bus was entering the intersection. The special occurrence report noted that Billups failed to be alert for conditions that caused the accident and failed to utilize proper operating procedures at or near the intersection. Morton stated that he discussed defensive driving procedures with Billups, including the proper speed for a bus proceeding through the intersection at State and Washington Streets. Morton stated that the speed through any intersection, including that particular intersection, should be about three to five miles per hour. Morton stated that Billups was suspended pursuant to CTA policy to automatically remove from service and suspend a driver who is involved in a serious accident.

On cross-examination, Morton explained that the reason for automatic removal and suspension of an operator who has been involved in a serious accident is to determine whether the operator is operating the bus within CTA policy and to prevent further accidents. Morton also explained that Billups was charged with the accident be-

cause of the violation of a CTA internal rule for defensive driving.

Wayne C. Williams, a bus service instructor, supervised Billups' retraining. Williams testified that the first step in retraining is to have a conversation with the operator about the accident precipitating retraining, as well as any past accidents. Following that discussion, Williams fills out a report. In the report filled out after his discussion with Billups, Williams indicated he rated Billups "marginal" under the section of the report indicating whether Billups understood his involvement in accidents, recognized his failures, and understood what could have been done in prevention. Williams stated Billups was required to drive a bus, for purposes of evaluating driving performance, and was given three other tests: a defensive driving test, a standard operating procedure test, and a test on the rules of the road.

As to Billups' operation of the bus, Williams stated that on the report, in the section for evaluation of the operator, Williams made a check mark next to boxes indicating Billups lacked knowledge of defensive driving principles, failed to recognize hazardous situations, and failed to judge distances and clearances accurately.

On cross-examination, Williams stated that following retraining Billups was qualified to drive a bus even though during the performance drive Billups committed errors. Williams testified that although he rated Billups "marginal" in certain areas, Billups was rated "satisfactory" as to his ability to concentrate and for the category of stability and coordination. On further cross-examination, Williams explained the difference between the retraining programs administered by the CTA. Operators involved in minor accidents participate in a one-day program, while operators involved in more serious accidents, such as the accident in the instant action, participate in a two-day program. Williams stated that in his experience as a CTA employee, every operator who was involved in an accident with a pedestrian at an intersection was retrained.

OPINION

On appeal, defendant CTA points out conflicting eyewitness testimony presented at trial as to whether the traffic signal was red or green when Billups proceeded into the intersection at State and Washington Streets and that, in light of that evidence, the trial court's allowance of the testimony of Hinman, Morton, and Williams, pertaining to matters subsequent to the accident, unfairly prejudiced defendant. Defendant argues that we should conclude that the testimony pertaining to Billups' CTA rules violations and retraining

should not have been admitted at trial for the same reason that testimony pertaining to post-occurrence remedial measures in other negligence cases is generally excluded. (See, *e.g., Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154.) In the absence of any Illinois authority, defendant urges the court to follow decisions in other jurisdictions for the rule that post-occurrence disciplinary measures taken against an employee are inadmissible for similar reasons. In support, defendant cites *Turner v. Hearst* (1896), 115 Cal. 394, 47 P. 129, *Engel v. United Traction Co.* (1911), 203 N.Y. 321, 96 N.E. 731, *Hewitt v. Taunton Street Ry. Co.* (1897), 167 Mass. 483, and *Rynar v. Lincoln Transit Co.* (1943), 129 N.J.L. 525, 30 A.2d 406, all of which illustrate the general principle that the post-occurrence discharge of an employee is inadmissible to establish negligence as a party admission.

We do not agree.

▉▉ ▉ While we do not dispute that the post-occurrence discharge of an employee is inadmissible as constituting a remedial measure, we cannot agree that that proposition provides guidance in the disposition of the matter before us. We note that the predominant rationale for excluding evidence of post-occurrence remedial measures, including discharge of an employee, is the policy against discouraging parties from undertaking safety measures. (McCormick, Evidence §275 (2d ed. 1972); *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 521 N.E.2d 1282.) That rationale, however, finds no apparent application here because the testimony adduced at trial related to procedures automatically undertaken as a matter of CTA policy whenever an operator was involved in an accident with a pedestrian. We have difficulty understanding why the general rule prohibiting testimony of subsequent remedial measures should obtain in this case as the reason for the rule, the likelihood of discouraging the undertaking of safety measures, would seem obviated by mandated CTA policy. *Cf. Gaunt & Haynes, Inc. v. Moritz Corp.* (1985), 138 Ill. App. 3d 356, 485 N.E.2d 1123 (evidence relating to action ordered by governmental official not precluded by rule); *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 404 N.E.2d 823 (evidence relating to action mandated by Federal statute not precluded by rule).

▉▉ However, we need not decide this appeal on that basis because, after reviewing the testimony of Hinman, Morton, and Williams, we cannot conclude that that evidence, consisting generally of the evaluation of Billups' driving ability, may properly be characterized as post-occurrence remedial measures. Rather, that testimony established the evaluations made by CTA supervisory personnel of Bil-

lups' knowledge and ability to operate his bus safely at the time of the accident and, as such, constituted admissions which the trial judge properly permitted as evidence.

We therefore affirm the trial judgment.

Affirmed.

MURRAY and PINCHAM, JJ., concur.