22 October 1999

3--97--0998

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

RALPH LOCOCO, individually and ) Appeal from the Circuit Court

as Special Adm'r of the Estate ) for the 12th Judicial Circuit

of DEBRA LOCOCO, deceased, ) Will County, Illinois

and as parent and natural )

guardian of JASON LOCOCO, )

a minor, ) 

)

Plaintiff-Appellant, )

)

v. ) No. 94--L--1270

)

XL DISPOSAL CORPORATION, ERIC )

REIL, individually and as agent )

for XL Disposal Corporation, )

WHEATLAND TOWNSHIP, and )

WHEATLAND TOWNSHIP ROAD )

DISTRICT, ) Honorable

) Lawrence C. Gray

Defendants-Appellees. ) Judge Presiding

JUSTICE KOEHLER delivered the modified opinion of the court:

The plaintiff in this wrongful death and personal injury action, Ralph LoCoco, appeals the jury verdict and the Will County circuit court's denial of his motion for a new trial.  The defendants in this action are XL Disposal Corporation (XL), Eric Reil (an employee of XL), Wheatland Township, and Wheatland Township Road District (collectively referred to as Wheatland).  The plaintiff ascribes error to a series of evidentiary rulings, contending that the circuit court erred when it: (1) barred the admission of an emergency medical technician's report; (2) allowed Wheatland's expert, a traffic engineer, to offer opinion testimony as to the most reasonable route to the scene of the accident; (3) barred opinion testimony as to defendant Reil's speed at the time of the accident; as well as causation testimony to the accident in general; (4) barred admission of Jason LoCoco's diagram of the accident scene and his written statement as a discovery sanction; (5) barred testimony regarding the subsequent remedial measures taken at the scene of the accident; and (6) barred evidence indicating that the stop bar lines on Route 59 created confusion for drivers.

Wheatland cross-appeals, arguing that it was entitled to judgment notwithstanding the verdict because: (1) the plaintiff's theory of liability was not predicated upon a proximate cause of the accident; and (2) it was immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1--101 
et seq
 (West 1992)).  For the reasons that follow, we affirm in part and reverse in part.

I. FACTS

The City of Naperville, Will County, Wheatland Township Road District, and a developer, named High Meadow Joint Venture, entered into an intergovernmental agreement in which they agreed to jointly design, construct, and install improvements at the intersection of Route 59 and 111th street.  The parties agreed, 
inter alia
, that  Wheatland Township Road District’s responsibility was to be the lead agency for the design and construction of the project.  As such, the agreement detailed six subparts that the Wheatland Township Road District “shall” do.  

In so doing, on July 13, 1993, the intersection stood paved and painted with stop bar lines on Route 59 and 111th street but lacked the corresponding traffic signs and roadside shoulders.  On that day, Debra LoCoco stopped at the stop sign on eastbound 111th street and then proceeded across the intersection where she was struck by a XL Mack disposal truck driven by Eric Reil, who was proceeding south through the intersection of Route 59.  Route 59 did not have a stop sign at that intersection, but as noted 
supra
, stop bar lines were painted on the ground.  Gary Daniels, the driver of another XL truck, was following behind Reil when the accident occurred.  Debra LoCoco and her passenger, Virginia Vriesema were killed.  Debra's son, Jason LoCoco, suffered personal injuries, but survived.

Ralph LoCoco, on behalf of himself, Debra LoCoco's estate, and minor Jason LoCoco, brought wrongful death and personal injury actions against the defendants.  At trial, the jury returned a verdict apportioning responsibility for the accident: 15% to Wheatland; 7% to the Illinois Department of Transportation; and 78% to Debra LoCoco. Conversely, the jury found no fault against XL, Eric Reil, or K-Five Construction Corporation. Because of the jury’s apportionment of over 50% fault to Debra LoCoco, the circuit court entered a verdict and judgment in favor of Wheatland in the wrongful death action.  In the personal injury action brought by Ralph LoCoco on behalf of Jason LoCoco, the jury returned a verdict in favor of Jason and against Wheatland and awarded Jason $85,000. 

II. DIRECT APPEAL

In his direct appeal, the plaintiff ascribes error to a series of evidentiary rulings by the circuit court.  Generally, we give deference to the rulings of the circuit court on the admissibility of evidence and reverse only if we conclude that the court abused its discretion.  
Grewe v. West Washington County Unit District #10
, 303 Ill. App. 3d 299, 306, 707 N.E.2d 739, 744 (1999).  In this case, we conclude that two evidentiary rulings were indeed erroneous, but that the errors were individually and cumulatively harmless.  The balance of the circuit court's rulings were not beyond the bounds of its discretion.

A. Emergency Medical Technician's Report

Shortly after the accident, Troy Hambly, a paramedic and a member of a three-member paramedic team, approached defendant Reil to determine if he required medical attention.  Reil informed Hambly that he was not injured and did not require medical assistance.  Emergency medical technician Brian Baudek, another member of the paramedic team, checked on Reil again because crash victims sometimes do not immediately realize that they have been injured.  Baudek also generated a service report following the accident, which included the notation: “crash speed = 55-60 mph.”  Baudek testified that he included this notation for the purpose of medical treatment and diagnosing Reil’s injuries.  However, he  did not have an independent recollection of Reil giving him that information.  The form did not contain any indication that Reil was the source of the speed estimate, and when asked where he got the estimate, Baudek stated: “It was probably from [Reil].  I don’t know.” 

The circuit court granted defendant Reil's motion 
in limine
 to bar admission of the emergency medical services report form, concluding that it was protected by the physician-patient privilege.  On appeal, the plaintiff argues that this was error because the privilege does not apply to paramedics and, alternatively, that Reil failed to establish a relationship with Baudek sufficient to give rise to the privilege.
(footnote: 1)
We disagree that the privilege at issue applies only to medical doctors.  In fact, the privilege has been applied to nurses in a number of cases.  See 
Netto v. Goldenberg
, 266 Ill. App. 3d 174, 640 N.E.2d 948 (1994), 
overruled on other grounds by
 
Holton v. Memorial Hospital
, 176 Ill. 2d 95, 679 N.E.2d 1202 (1997).; 
Village of Arlington Heights v. Bartelt
, 211 Ill. App. 3d 747, 570 N.E.2d 668 (1991); 
House v. Swedish-American Hosp.
, 206 Ill. App. 3d 437, 564 N.E.2d 922 (1990); 
Roberson v. Liu
, 198 Ill. App. 3d 332, 555 N.E.2d 999 (1990).  Paramedics have also been found to fall within the privilege.  See  
People v. Wilber
, 279 Ill. App. 3d 462, 664 N.E.2d 711 (1996); 
People v. Maltbia
, 273 Ill. App. 3d 622, 653 N.E.2d 402 (1995); 
People v. Krause
, 273 Ill. App. 3d 59, 651 N.E.2d 744 (1995).  In this case, the privilege was available to Baudek and Reil. 

Availability of the privilege, however, does not mean that the privilege inherently attaches.  The physician-patient privilege is one of trust and confidence "in which the patient knowingly seeks the physician's assistance and the physician knowingly accepts the person as a patient."  
Reynolds v. Decatur Memorial Hospital
, 277 Ill. App. 3d 80, 85, 660 N.E.2d 235, 239 (1996).  The purpose of the privilege is to encourage free disclosure by the patient of information he might otherwise be embarrassed to reveal, and it exists for the protection of the patient.  
People v. Herbert
, 108 Ill. App. 3d 143, 149, 438 N.E.2d 1255, 1259 (1982).  This issue involves a question of law and is, therefore, reviewed 
de novo
.  
Joel R. by Salazar v. Board of Education of Mannheim School District 83
, 292 Ill. App. 3d 607, 613, 686 N.E.2d 650, 655 (1997).

In the case at bar, defendant Reil declined assistance from Baudek.  Accordingly, it cannot be said that the equivalent of a physician-patient relationship was ever established between the two men.  It follows that, without that relationship, no physician-patient privilege can be claimed.  The circuit court made no other ruling with regard to admissibility, and our review of the record reveals that a sufficient foundation was laid to bring the records in under the business records exception to the hearsay rule.  Accordingly, the report should have been admitted.  In granting the motion in 
limine
 to bar its admission, the circuit court erred.

B. Defendant's Opinion Witness Testimony

Prior to trial, the plaintiff moved 
in limine
 to bar the testimony of the defendants' expert opinion witness Paul Box.  Box, a traffic engineer, was disclosed by the defendants to counter the testimony of Jason LoCoco as to the route taken by his mother on the day of the incident.  Box was ready to testify that, in his opinion, another route was more reasonable and that, to a reasonable degree of certainty, he believed Debra LoCoco did indeed take this "more reasonable" route.  The purpose of this testimony was to establish that Debra LoCoco had driven through the intersection along the route taken by defendant Reil and, therefore, should have known there was no stop sign controlling traffic in that direction.

The circuit court granted the motion in part, barring Box from articulating his opinion as to the route actually taken by Debra LoCoco.  Box could, however, opine as to the route which would have been most reasonable to take.  At trial, as expected, Jason LoCoco testified as an eyewitness to the route which his mother took on the day of the accident.  Later at trial, Box testified on direct examination as follows:

"Q.  All right.  Now, having seen this layout subsequent to your review of Jason's deposition, does the physical layout as set forth in this exhibit in any way change your opinions regarding Jason's observations and whether they were consistent with the physical surroundings?

A.  No, it just solidifies my belief of Route 59 as they came.  A 13-year-old boy could be mistaken."

The plaintiff argues that the circuit court erred in allowing Box to testify to his opinion of the most reasonable route for Debra LoCoco to take.  He also argues that Box's trial testimony violated the court's order in limine.  We agree with both assertions.

The test for admission of expert testimony is whether it will aid the jury in understanding the facts. 
Carlson v. City Construction Co.
, 239 Ill. App. 3d 211, 239, 606 N.E.2d 400, 417 (1992).  Expert testimony is not admissible on matters of common knowledge, unless the subject is difficult to understand or explain.  
People v. Gilliam
, 172 Ill. 2d 484, 513, 670 N.E.2d 606, 619 (1996).  A circuit court's ruling on the admissibility of expert testimony will not be disturbed absent an abuse of discretion.  
Carlson
, 239 Ill. App. 3d at 241, 606 N.E.2d at 418.

Box's testimony does not meet this evidentiary threshold.  Even were the testimony limited as the circuit court's order 
in limine
 directed, it amounts to no more than one man's speculation as to what Debra LoCoco did on the day of the incident, and flies in the face of eyewitness testimony directly contradicting it.  Such testimony should not have been allowed into evidence.  An adult's speculation does not trump an adolescent's eyewitness account, regardless of whether that adult questions the accuracy of adolescent's memory in general.  Moreover, the plaintiff is correct when he states that the testimony elicited on direct examination improperly violated the order 
in limine
, as its import was to reveal to the jury Box's opinion on the actual route taken.  Error occurred in both the court's initial ruling and with Box's testimony at trial.

C. Plaintiff's Proffered Opinion Witness Testimony

The plaintiff next asserts that the circuit court abused its discretion when it granted the defendants' motions 
in limine
 barring expert reconstruction testimony concerning Reil’s speed, as well as causation testimony in general. 

At trial, the plaintiff sought to introduce expert testimony from traffic reconstructionist Dwayne Owen as to the speed at which defendant Reil was driving immediately prior to the accident.  In addition, the plaintiff sought to offer testimony of investigating police officer James Bedell that the intersection was confusing.  The plaintiff also sought to elicit the opinions of officer Bedell and Mr. Owen as to the cause of the accident.  Specifically, Bedell would have opined that the stop bar lines may have been confusing and were, therefore, a factor in the accident.  Owen would have opined that the accident would not have occurred in defendant Reil had been traveling less than 55 miles per hour.

None of these opinions, however, were included in the plaintiff's opinion witness disclosure required under Supreme Court Rule 213(f) and (g).  For this reason, the circuit court barred the testimony.  We cannot say that this was an abuse of discretion.  Compliance with Supreme Court Rule 213(f) and (g) is not optional.  Barring of opinion witness testimony is an appropriate and available sanction for a party's failure to adequately disclose those opinions.  See 
Department of Transportation v. Crull
, 244 Ill. App. 3d 531, 690 N.E.2d 143 (1997).  No error occurred with this ruling.

D. Diagram and Written Statement

Likewise, the circuit court barred admission of Jason LoCoco's diagram of the accident scene and his written statement, both of which were generated the day after the accident, because the plaintiff failed to disclose them until after the commencement of trial.  The plaintiff argues that he did not anticipate the need to use these documents at trial but that they became necessary in light of defense expert Paul Box's testimony contradicting Jason's testimony concerning the route his mother drove on the day of the incident.  The plaintiff further asserts that disclosure until then was unnecessary, despite discovery requests, because the documents were protected by the attorney-client privilege.

The plaintiff's assertion of attorney-client privilege is without merit.  The statement and diagram were generated at the suggestion of Jason's father and were only later turned over to the plaintiff's counsel.  A plaintiff cannot render an otherwise discoverable document undiscoverable simply by turning it over to his attorney.

Moreover, our supreme court has provided that:

"When information or documents are withheld from disclosure or discovery on a claim that they are privileged pursuant to a common law or statutory privilege, any such claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced or disclosed and the exact privilege which is being claimed."  Supreme Court Rule 201(n).

In this case, the plaintiff never identified the nature of the statement or the diagram and, moreover, never created the privilege log required by Supreme Court Rule 201(n).  Instead, the documents' existence were kept secret until the time of trial.  In light of this, barring their admission was an available and acceptable sanction.

Moreover, the plaintiff's very argument belies any prejudice.  In his brief to this court, the plaintiff states that the documents were needed in the event that it was necessary "to either (1) refresh Jason LoCoco's recollection in the event he did not remember at all which route they traveled upon on the day of the collision; or (2) rebut charges by the defendants of recent fabrication."  However, neither of these contingencies occurred at trial.  Accordingly, not only was there no error in barring the documents as a discovery sanction, but the plaintiff has affirmatively indicated that he did not need the documents in any event.

E. Subsequent Remedial Measures

The plaintiff next asserts that the circuit court erred when it barred testimony regarding subsequent remedial measures taken at the scene of the incident.  Our review of this issue is 
de novo
 because it involves a question of law.  
Joel R. by Salazar v. Board of Education of Mannheim School District 83
, 292 Ill. App. 3d 607, 613, 686 N.E.2d 650, 655 (1997).  It is well-established that subsequent remedial measures taken by the defendant after the incident which caused the suit are not admissible.  
Hodges v. Percival
, 132 Ill. 53, 23 N.E. 423 (1890).  On the other hand, subsequent remedial actions taken by a person other than the person against whom the evidence is being offered are not precluded under the subsequent remedial measures doctrine.  
Gaunt & Haynes, Inc. v. Moritz Corp.
, 138 Ill. App. 3d 356, 365, 485 N.E.2d 1123, 1129 (1985).    

The plaintiff asserts that 
Gaunt
 is controlling.  In 
Gaunt
, 138 Ill. App. 3d 356, 365, 485 N.E.2d 1123, 1129 (1985), the Illinois Department of Transportation (IDOT) required the defendant to make subsequent remedial changes.  At trial, these subsequent remedial changes were allowed into evidence.  On appeal, 
inter alia
, this ruling was affirmed, the court holding that the general exclusionary rule relating to subsequent remedial measures did not apply because the defendant did not act voluntarily, but was instead required to act by a governmental authority.  
Gaunt
, 138 Ill. App. 3d at 365, 485 N.E.2d at 1129.  

This case is distinguishable from 
Gaunt
.  After the accident at issue, the City of Naperville and the Illinois Department of Transportation (IDOT), neither of which are parties to this litigation, directed a City of Naperville official to place a "cross traffic does not stop" sign under the stop sign on 111th street, and they directed Superior Road Striping, K-Five's subcontractor, to rub out the stop bars on Route 59.  The defendant, Wheatland, was involved in an intergovernmental contract that included the City of Naperville and those local government entities that voluntarily decided to make the intersection safer by adding the sign and rubbing out Route 59's stop bars.  Wheatland's involvement was sufficient to bring this action under the scope of inadmissible subsequent remedial actions.  No error occurred when the testimony was barred. 

F. Near Accidents and Confusion Created by the Stop Bar Lines

The plaintiff next asserts that the circuit court erred when it barred evidence which the plaintiff believes tends to show that the stop bar lines on Route 59 created confusion for drivers.  Specifically, the plaintiff sought to call two witnesses who would testify to their confusion at the subject intersection.  Kathryn Roa, a Plainfield fire protection paramedic, was in the second ambulance to arrive at the scene.  Ms. Roa would have been called to testify that she was familiar with the intersection, driving through it two to three times per week.  The night before the accident she had driven through the intersection and had slammed on her brakes when she realized that she was crossing stop bar lines.  Jon Bowles worked at the Speedway gas station at the intersection.  Mr. Bowles would have been called to testify that the stop bar lines would appear to be a four-way stop to a driver unfamiliar with the intersection and that he knew of drivers screeching to a halt due to the stop bars.

It is well-established that evidence of prior accidents under similar conditions may be relevant and admissible.  
Taylor v. Manhattan Township Park District
, 138 Ill. App. 3d 23, 485 N.E.2d 399 (1985).  However, the testimony that the plaintiff sought to introduce does not concern prior accidents, but instead concerns "near" accidents and driver confusion.  Whether "near" accidents and driver confusion are admissible as a matter of law has never been addressed by this court, and we need not establish a rule of law at this time.  Under the facts of this particular case, the circuit court appropriately excluded this evidence due to its lack of relevancy.  Both witnesses testified to confusion that drivers would have as they traveled along Route 59.  Ms. Roa almost stopped where there was no stop sign, and Mr. Bowles had heard the screeches of other cars that had done the same thing.  The circuit court, however, was well within its discretion when it concluded that this testimony would shed insufficient light on the perception of a person driving along 111th Street, as Mrs. LoCoco was doing on the day of the accident, to be admitted into evidence.  No error occurred with this ruling.  

G. Import of Error

In summary, we conclude that the circuit court erred with two evidentiary rulings.  We must next decide whether those errors, either individually or cumulatively, require reversal.

Inherent to this exercise is a review and analysis of the evidence adduced at trial.  While it is generally not our role to re-weigh evidence, such an examination is necessary to decide whether a plaintiff suffered any prejudice from the rulings.  

This analysis, as it applies specifically to the wrongful death action,requires us to
 
decide whether a jury might have reduced Debra LoCoco's contributory negligence by at least 28% had the evidentiary rulings been correctly made.  If not, no prejudice can be attributed to the rulings, for the upshot would be the same: the decedent's husband and estate would be unable to recover due to Debra LoCoco's own negligence
.

The tragic facts of this case are that Debra LoCoco traveled through a stop sign into an intersection involving a busy highway where cross-traffic was not required to stop.  For this, the jury found her 78% the cause of the accident.  We believe the possibility extremely remote that, had the jury heard of only one possible route taken by LoCoco (that described by her son), or had the jury heard that defendant Reil may have been traveling 55-60 miles per hour, LoCoco's contributory negligence would have been assessed at 50% or less. Regardless of the route taken, LoCoco entered an intersection without the right of way.  Moreover, regardless of his exact speed, defendant Reil was driving a 77,500 pound, 39-foot-long Mack truck along a busy highway at (by all accounts) a moderately high rate of speed.  The jury found that the blame for this accident, by and large, had to be laid at LoCoco's doorstep.  Because we believe that, absent the two assigned errors, LoCoco's contributory negligence would not have been assessed low enough for the plaintiff to recover on the wrongful death action, we deem the errors to be harmless.

The same cannot be said, however, with regard to the personal injury action brought by Jason LoCoco.  Had the trial errors not occurred, the allocation of individual fault among the defendants might very well have been different.  It is certainly conceivable that one or more of the defendants which was not found negligent might have instead been assessed some culpability.  One of the defendants might have been assessed more than 25% culpable, giving rise to joint liability as to that defendant.

That having been said, we note that the errors affected only the allocation
 
of fault.  Importantly, the errors had no effect on the amount of the jury's verdict.  Accordingly, we affirm the judgment below as to the wrongful death action and affirm the judgment on the personal injury action in favor of Jason LoCoco in the amount of $85,000.  We reverse the judgment as to the allocation of fault among the parties, including Debra LoCoco, and remand for a new trial on the issue of allocation of fault only.

III. CROSS-APPEAL

Wheatland cross-appeals the circuit court's denial of its motion for judgment notwithstanding the verdict.  Wheatland asserts that it was entitled to j
.n.o.v.
 for two reasons: first, because the plaintiff's theory of liability was not predicated upon a proximate cause of the accident, and second because it was immune from liability under the Tort Immunity Act (745 ILCS 10/1--101 
et seq
 (West 1992)).  

The circuit court may grant a judgment notwithstanding the verdict when all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 484, 510, 229 N.E.2d 504, 513 (1967).  A judgment notwithstanding the verdict should only be granted when there is a total failure to prove an essential element of the plaintiff's case.  
Baier v. Bostitch
, 243 Ill. App. 3d 195, 202, 611 N.E.2d 1103, 1108 (1993). 

A. Proximate Cause

Wheatland argues that the absence of barriers, barricades, or other traffic restraining devices at most furnished a condition of the property.  Further, Debra LoCoco's action in pulling out in front of the truck violated her statutory duty to yield and was the sole proximate cause of the accident.  Moreover, plaintiff's claim that Debra LoCoco was confused by the stop bar lines on Route 59 is based upon surmise and conjecture because there is no factual link between the intersection's condition and the accident.  

The plaintiff counters that Wheatland may be liable even if its negligence is not the sole proximate cause of the plaintiff's injuries because its conduct contributed in whole or in part to the injury as found by the jury.  Further, the plaintiff contends that no surmise or conjecture exists because Jason LoCoco was an eyewitness, who believed at the time of the accident that the intersection constituted a four-way stop.  Last, the plaintiff asserts that even conduct that violates the law does not become an unforeseeable intervening cause.  Accordingly, where Wheatland could have reasonably foreseen the intervening act, it is not released from liability by Debra LoCoco's action.  

More than one proximate cause of an injury may exist.  
Bentley v. Saunemin Township
, 83 Ill. 2d 10, 17, 413 N.E.2d 1242, 1246 (1980).  Further, questions concerning proximate cause are factual matters for the jury to decide.  
Espinoza v. Elgin, Joliet and Eastern Ry. Co.
, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995).  We conclude that it was reasonable for the jury to find that Debra LoCoco's actions were not the sole proximate cause of the accident.  We further conclude that the stop bar lines created by Wheatland may be considered a proximate cause of the accident and not merely a condition by which Wheatland is released from liability.  Consequently, we conclude that Wheatland's conduct in placing stop bar lines on Route 59 without the corresponding traffic signs is the type of conduct by which a reasonable person may foresee an accident as a likely result.  
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 456, 605 N.E.2d 493, 503 (1992).  

B. Tort Immunity Act

Wheatland also contends that it was immune from any negligence for failing to supervise the improvement of the intersection and for its alleged failure in providing additional traffic signs under the Tort Immunity Act.  745 ILCS 10/1--

101 
et seq
 (West 1992).    

In this case, the intergovernmental agreement, to which Wheatland was a party, provided the plan for the improvements of Route 59 and 111th street.  Wheatland's responsibilities, as designated by the plan, included: (1) retaining a consultant to prepare design and construction drawings for the intersection's improvements; (2) submitting plans and specifications for the improvements to IDOT for its approval prior to construction; (3) preparing the bids and letting the contracts for the roadway construction improvements; (4) working directly with the IDOT to secure and install temporary traffic signals; (5) reviewing and approving change orders where appropriate; and (6) assuming responsibility for construction inspection and management.  

These responsibilities are consistent with Wheatland's authority as granted by section 11--304 of the Illinois Vehicle Code (625 ILCS 5/11--304 (West 1992), which provides in pertinent part:

"*** Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic.  All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual.  Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the county engineer or superintendent of highways."  625 ILCS 5/11--304 (West 1992).

Under common law, discretionary duties will not subject a municipality to tort liability even if performed negligently.  On the other hand, ministerial duties can subject a municipality to tort liability if negligently performed.  167 Ill. 2d at 473, 657 N.E.2d at 992.  Whether a municipality's acts were discretionary or ministerial must be decided on a case-by-case basis.  
Snyder
, 167 Ill. 2d at 474, 657 N.E.2d at 992-93.

In the case at bar, Wheatland's highway commissioner Dayton Jarnagin obtained a permit from IDOT for the temporary improvements to the intersection of Route 59 and 111th street.  IDOT informed Jarnagin that prior to the installation of the traffic signals, the stop bar lines must be in place on Route 59.  Further, the IDOT permit required compliance with the State of Illinois Specifications for Road and Bridge Construction.  However, these specifications did not address when the striping of an intersection is to be performed in relation to the installation of traffic signals.  About two weeks prior to the accident at issue, the stop bar lines were laid down on Route 59 and the stop line on 111th street was moved back several feet so that a bush on the northwest corner became a partial sightline obstruction.  For approximately two weeks until the accident, the intersection remained with the stop bar lines in place but without the corresponding traffic signals.

In deciding whether Wheatland is immune from liability, we must determine whether Wheatland, at the direction of Jarnagin, was acting in a discretionary or ministerial manner.  "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act."  
Snyder
, 167 Ill. 2d at 474, 657 N.E.2d at 993.  Section 11--304 mandates that highway commissioners, such as Jarnagin, must comply with the Illinois Manual and Specifications (manual and specifications).  Although the manual and specifications do not specifically address when stop bar lines must be laid in conjunction with the corresponding traffic signs, the manual does establish the highway commissioner's duty of reasonable care.  

We conclude that Jarnagin's actions must be characterized as ministerial, "for the duties are performed under a given set of facts in a prescribed manner."  
Snyder
, 167 Ill. 2d at 474, 657 N.E.2d at 993.  Jarnagin was not only bound to act in accordance with the intergovernmental agreement, but he was also bound to act in accordance with the statutory and regulatory guidelines.  
Snyder
, 167 Ill. 2d at 474, 657 N.E.2d at 993.  Furthermore, once the parties established the intergovernmental agreement as a plan for the intersection's improvements and began the performance of the improvements, Wheatland's discretionary function ended and its ministerial function began.  Accordingly, Wheatland had a duty to make the improvements in a non-negligent manner according to the manual, which dictated that the improvements must be done with reasonable care.  See 
Snyder
, 167 Ill. 2d at 474-75, 657 N.E.2d at 993.  To conclude as Wheatland argues that its acts were discretionary would result in an impermissibly expansive definition of discretionary immunity.  

Accordingly, we conclude that Wheatland was not immune from its negligence in failing to supervise the improvement of the intersection and for its alleged failure in providing additional traffic signs under the Tort Immunity Act.  Wheatland's action constituting negligence was ministerial in nature and, thus, subjected Wheatland to liability.

IV. CONCLUSION

The circuit court erred when it ruled that a report generated by a paramedic fell within the physician-patient privilege, given that the supposed patient unambiguously declined any care and, accordingly, prevented the establishment of the physician-patient relationship.  It also abused its discretion when it allowed an expert to surmise that Debra LoCoco took a route different than the one to which an eyewitness testified.  Even when considered cumulatively, however, both of these errors were harmless
 
with regard to the wrongful death action.  They were also harmless with regard to the jury's verdict on the personal injury action regarding the extent of the damages.  However, the trial court did indeed commit reversible error on the limited issue of allocation of fault among the various parties.  The circuit court did not err in any other challenged evidentiary rulings, including those which constituted discovery sanctions.

Additionally, the circuit court properly denied Wheatland's motion for judgment notwithstanding the verdict, given that the plaintiff adequately established proximate cause and given that Wheatland was not immune to the plaintiff's allegations under the Tort Immunity Act.  Accordingly, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

HOMER and LYTTON, JJ., concur.

FOOTNOTES
1:
The plaintiff further asserts alternative arguments of waiver and that the particular facts of this case require disclosure even in the face of a privilege.  We need not address these fact-specific arguments in light of our resolution of the plaintiff's principal arguments.